May it please the Court, Counsel. The District Court in this case ruled that the prevailing parties were not entitled to attorney fees for Wheatley Sr.'s services, in part because he practiced law without ProHop VC permission. In a brief filed with this Court by the defendants, the defendants have described Wheatley Sr.'s appearance as follows, The equities favor denial of Wheatley Sr.'s fees because he concealed his involvement in the District Court proceedings until after the case was settled, leading American to believe that plaintiffs had been represented in the District Court only by Wheatley Jr. We don't feel that that type of limited assistance from Oregon does require ProHop VC. Let me ask you just a purely practical question. It's hard to exactly understand why an application wasn't filed. There is a reason for that, and it's simply this, that when the case was first filed, it seemed like such a fundamentally simple case of unilateral contract with part performance that a father, an attorney sitting in Oregon is telling his son, Donna, you don't need help on this. This is so simple. File it. File your motion for summary judgment, and the Court will take care of it. Yes, but even assuming that that's the case, at some point it became obvious that it would complexify itself. I mean, there was never any effort, and it's unfortunate that it sounds bad to say unlicensed practice of law because it's not impugning stature or ability or anything. The point is, though, that there's a technical requirement, if not to be admitted by the State of California, at least to do the just pro forma, one-second, automatic almost, if one qualifies for ProHop VC status. Well, Your Honor, I never set foot in the Court. I never signed a pleading. I never appeared. I never negotiated with the other attorneys. 139 hours is not doing nothing. Beg your pardon? I mean, 139 hours is not doing nothing. No, I certainly did something, but as far as my involvement in California, there was 3.5 hours of phone conversation when the California attorney was on the phone with one client discussing the facts of the case. Now, this case should have been resolved on August 27th of 2000 when the summary judgment was filed because of this ERISA argument that came up that the Ninth Circuit Court of Appeals revealed was improper and invalid, extended it for three years. I did appear in that argument for the Ninth Circuit. Once the court said, yes, that ERISA is not valid, it was created months after the lawsuit was filed. It allegedly was based upon an oral agreement made earlier, which wasn't, and it was for the benefit of the employer, not the employee. There again, it did not seem that my presence would add anything to the case in district court because after three years. I mean, I hear you, but the problem is we've got a California statute and we've got some legal principles here. Which are difficult to deal with. I understand. The legal principles are difficult in how they apply to an out-of-state attorney who has what appears to be substantial involvement in litigation in California for California clients without having been given the ticket. Well, I think the cases that we have cited indicate that this was not an impermissible practice of law in California where you have a local attorney, which wasn't present in the Bierbauer case, as you know. You have a local attorney in California signing the pleadings, doing the negotiations, appearing in court, and acting as a filter, just as he would or she would with a law clerk or with anyone else. The product from the outside attorney is merging into it, into the product of the attorney of record. So the reason you didn't apply to the PROAC v.J. admission was because the PROAC's v.J. admission rule speaks about appearance. It says what? It speaks about appearing. And you never appeared? Never appeared. So that's why you didn't apply? That's why I didn't apply. Now, by hindsight, obviously I would because one of the issues would have gone away. Can I take you to a slightly different aspect of this? The Supreme Court recently decided the case of Richland, Secretary of Human Services v. Chertoff, in which you may be familiar with that case? No, I'm not. It involved, among other things, an ability of a paralegal to be compensated in terms of legal fees. We recently decided a case called NRDC v. Winter, in which an unlicensed attorney was allowed to be compensated in connection with a case, because there was some expertise there, even though that person was not licensed to practice. What bearing, if any, do you think those cases should have on this? Well, I think that they certainly stand for the proposition that in today's society, there is a need for more assistance of an attorney in order to provide competent representation of the client, and that if this comes through not a state family member, a public service agency, through a law clerk, we should be balancing that public policy consideration. Doesn't it really also, when you've got these huge, even international firms, with thousands of lawyers dealing with each other around the country, around the world, who are assisting in some way, how do you regulate what is and is not the practice of law, if someone's not actually appearing? It just seems to me that this is an anomaly in a modern legal context. Do you agree with that? Well, I do, and I cited in our brief the Fout case from Hawaii, which addressed the very issue you're talking about. We had an Oregon lawyer providing assistance to a Hawaii attorney in litigation in Hawaii. That lawyer had a preexisting, as I recall it, general counsel relationship with clients. That's true. But nevertheless, we do have the Oregon lawyer providing assistance in the litigation in Hawaii without presently being there. And what the court said, and I recognize your point is certainly a helpful point, you'd prefer to have it, but the court said a blanket rule prohibiting the taxing of fees for the services of extra-jurisdictional legal counsel who assist in the case should be given some consideration because the court went on to note that the rule requires an attorney to provide competent representation, and in that paragraph the court noted that a restrictive rule might create an incentive for ethical violations inasmuch as Hawaii rules mandate that the lawyers provide competent representation to a client. Now, I think in answer to Judge Smith's question that public policy is a consideration. We know the public policy from California or any unauthorized practice of law is we want competent representation. That's the purpose. But on the other hand, the public policy should also lean toward protecting a plaintiff who might have a meritorious case that would otherwise not be prosecuted and they would be denied justice because of financial disincentives or a sole practitioner to take on a 10-year war of attrition with the firm that has 900 members in it. It's a competing interest of public policy, which is what makes this very difficult. Yes. But is it up to federal appellate court to resolve those public policy issues, or is it up to the State of California? Well, I think it is up to the court to interpret the State of California's law about practicing law in California based upon the public policy considerations that give rise to law. It would be easy if it had already clearly done it. Pardon? This would be easy if it had already clearly done it. Well, the California law is designed or was enacted to ensure that those performing legal services do so competently. And all I'm saying is that I don't believe the defendant's objection in this case is driven by concern over whether the plaintiffs were competently represented. I think, though, that having competent representation, as was mentioned in the Hawaii case. The California legislature has never said any competent lawyer can provide legal services to clients in California  That's quite true. But what the California court did say in Breyer-Bauer is that to determine what is the practice of law in California, we must look at the quantitative amount of time that the attorney spent with the client, in this case three and a half hours with a local lawyer, and 139 hours working on the client's business, which was almost as much. I've forgotten the exact number that your son worked, but pretty much the same. So there are six of one, half dozen of the other. Well, okay. We're talking, I'm just telling you, the California court talks about the quantitative time that you spend with the client and also the amount of time that you spend in the state. Activity. Zero in the state. Yeah, physically, but it's also clear in California that physical presence in the state isn't the determining factor. It's a case-by-case analysis. Well, you know, if this court concludes that it is improper and is practicing law in California, I'm committing a misdemeanor in California because I'm sitting in Oregon helping my son write a brief because he is in his tenth or ninth year of litigation and is needing help to represent his client competently, but that that is practicing law in California, then, you know, that's the way it is. But I don't think that should be the rule. Isn't the real question here, as I understand Beer Bauer and the state law, basically the state of California in the State Bar Act says we're not regulating the practice before federal courts. That's the jurisdiction of the federal courts. And in this particular instance, you have the issue of the Pro Hoc Vitae situation. You've made it clear that you were never required to and never did appear in person. Indeed, in this situation, you may never have set foot in the state of California in connection with this particular matter. Under the circumstances, are we, were we to construe this in a way that we're just interpreting federal procedural rules? Are we in any way really interpreting California law? Aren't we really interpreting federal procedural practice rules that are, in this case, imposed by the district court? Well, I would say yes to that. That's what I believe, but nevertheless, the trial judge went the extra step, and that's why I have raised Beer Bauer, Frout, Cowan, and all the other cases that said when you have the local attorney, which you didn't have in Beer Bauer, it's not practicing. But I agree with you completely. This is a federal court issue. In 25 words or less, what would be the head note on the opinion that you would write? My head note would be that the federal court determines who is authorized to appear in district court under the local rules, and I don't know if I'm going over 25, and an attorney who does not physically appear in court, negotiates, enter the state of California, or have anything to do with the appearance in court isn't appearing or practicing and doesn't require Pro Hop V.C. admission. Thank you. I'm afraid that went over 25, but I'm sorry. But getting back to the- You might want to save some time that you don't have left. We will give a little time to respond. Well, if I could just quickly go over a couple points here. Well, I mean, the time has expired. Yes? I'm sorry. It just changed on me. I apologize to you. Your time has not expired. Keep going if you want, or save it. Well, okay. I wanted to mention on the Rule 54 attorney fees issue at the end, there is some confusion about the settlement that was reached in asking for attorney fees. And I'd like the courts to seriously look at the Sony case, because this settlement, I think, as pointed out in the Sony case, you can have a settlement and it's a private settlement on the private side, but it can have conditions that if it doesn't work, you go to the federal side. So as Sony said, you cannot- you can have a private contract where an attorney is going to submit an issue to the court, and if Judge Snyder said, here's what you get, everybody's happy, the case is over, you settle it. But if that turns out to be a no, then you go to federal court, and the parties can't manipulate the federal jurisdictional procedure, and it does require a judgment even though the plaintiff didn't want one, and Rule 54 requires filing within 14 days, and so that's what happened. And lastly, I've got 19 seconds left. On the sanction issue, which I'm only looking at the internal sanctions, but I want to really stress the fact that where defendants suggest that this ERISA plan failed because, quote, American had not complied with the formalities amending that plan, and that isn't really what happened. There never was a plan. They said there was in open court, but there wasn't. And as your court said on appeal, months after the lawsuit was filed, they got together and said, we've created a plan, and the court didn't like that one either because it was for the benefit of the plaintiff instead of the defendant. And talking about Mueller's deposition as being – which was improper, it was false, but it was enough to stop the summary judgment. And what – this isn't – You can wrap it up. Huh? If you can wrap it up. Okay. I've got it in 25 words or less, if I may. They said that this was a misstatement that he made. But it wasn't a misstatement. This was a statement that he made on a affidavit handed to him where he said, I personally know the facts set forth in this declaration. It's not like being on cross-examination where you say, oops, sorry. Thank you. Thank you, Your Honor. My name is Rex Heineke. I'm here on behalf of American. The Court obviously and understandably is interested in what I'll call colloquially the Brewer-Brower issue, the question of whether Mr. Wheatley Sr. is entitled to fees. So I'd like to respond to what I think were some of the points that opposing counsel raised and also the Court raised. And obviously I'd be happy to try and answer any questions that the Court might have. First, I think it's important to realize that the test in Brewer-Brower is not simply whether or not one had a relationship with a client or how substantial that was. That's one way to be practicing law in California under Brewer-Brower. And the opinion is quite clear. It says or. The other way to do it is to provide substantial assistance to a case that's going on in California. And here I really don't see how there can be any doubt that that test is met here. The level of involvement in all aspects of this litigation over a long period of time, involving many hours here, under any view of what substantial assistance is. Can I just stop you for one second here? I want to quote from Brewer-Brower and get your response to this. They said, The State Bar Act does not regulate practice before the federal courts. Thus, an out-of-state attorney engaged to render services in bankruptcy proceeding was entitled to collect his fee. In this case, of course, it wasn't the bankruptcy court. It was the district court. But why in this situation does an attorney, indeed the former president of the Oregon State Bar, who never sets foot in the state, sends transmissions, things that his son appears before the court and gives, why does that violate the State Bar Act? Because, and it's different in the cases that you're talking about, because the Central District of California chose to adopt the State Bar Act as its standards. This would be a very different case were that not the situation. But the Central District has done that. Could you explain that a little bit more? Certainly, Your Honor. I think the Central District of California could pick different standards than California for admission, if it chose to. Because it's a federal court. But doesn't that get to, well, it even has to be admitted in this case. You've got the Supreme Court. I cited this Richland case. I wrote it, NRDC v. Winter, where we had an attorney who was a specialist in environmental law, was never admitted to practice. And we awarded fees based upon the Supreme Court's rulings and other similar matters where paralegals were entitled to compensation in an action under the equal access to justice rule. Why is that any different than this situation? A couple things, Your Honor. First, by no stretch of the imagination is Mr. Wheatley Sr. acting as a paralegal here. So cases that talk about incorporating the work of a paralegal into the work of a lawyer, and that being something that can be compensated, we have no disagreement with those cases. So he would not disagree if he would be entitled to some compensation. It's really a question of the amount of the compensation. If you were compensated, arguendo, as a paralegal, would you object to that? Well, I guess not, Your Honor, by no stretch of the imagination. No, I'm not saying he is a paralegal. I'm just taking any analysis. And the other thing is he had a paralegal work on this. And I don't believe we objected to those fees, although it's really because they were so minor. Okay, so if the Supreme Court says a paralegal can be compensated, obviously someone who is not a member of the bar. And in our case, we found that an attorney, not licensed to practice, but who was an expert in environmental law, was entitled to be compensated at a lesser rate than the licensed attorneys. What relationship does that have to this case? Well, Your Honor, I did not remember the NRDC case as saying that. But I know Your Honor wrote it, so I'm certainly not going to disagree about that. I thought it simply talked about a cap on fees and didn't talk about unlicensed attorneys, but maybe I'm not that wrong. Well, there was the one guy. It's a footnote, actually, so you wouldn't necessarily see it. But it was an unlicensed attorney who was a specialist. And he was not entitled to compensation at the same level as the licensed attorney. Right, Your Honor. But even if that, I accept that. But that's a decision under that statute. We're not talking about that statute. We're talking about the California State Bar Act and how it has been interpreted. And that's what's controlling here, not what Congress may have determined under some other statute is the way to compensate people or not to compensate them. So I don't see how that really answers the question. So you're saying that because the district court chose to have the State Bar Act control, that that is what's binding here as opposed to general concepts of comedy and the way law is practiced around the United States? Exactly, Your Honor. The central district could have said nothing about the California State Bar Act, could have adopted its own standards, could have just said fill out the same application that we have here for Pro Hoc Vitae, and that's it. Do you agree that if he had applied for Pro Hoc Vitae admission, he would have been admitted? Well, that's discretionary with the district court. Discretionary doesn't mean they could do whatever they want. I understand that. This man is a former president of the Oregon State Bar. He's been listed as one of the top lawyers in the United States. He's been an appellate practitioner for 45 years. He's admitted to this court. And you're saying there's some question that he would have been admitted? No, Your Honor. All I'm saying is he needed to fill out the form and if he said things like that. I know, but he's offered a reasonably plausible explanation. Could I read you from a paragraph in the Cowan case just next to the last? First of all, it speaks about an earlier case, the McHugh case, just to put it in context. And it says in the McHugh case it was pointed out that although McHugh was not a member of the State Bar of California and he had tried and disposed of some 20 cases in the federal courts of California, he had not illegally practiced law in this state. By doing so, it should be obvious in the circumstances of this case that Mr. Cowan was not improperly practicing law in California by giving legal advice here with respect to a single case in the bankruptcy court of the United States. And it says while the transcript is silent as to whether Mr. McCowan applied to the federal court for the right to participate with a California attorney of record in the proceedings, it seems certain that if he had done so, the court would have granted the request as a matter of comedy and it awarded him counsel fees. Now, why is that different here? I mean, there's no question that he would have been admitted. It almost seems – I mean, here he is. He's practicing law in California right now as a member of the bar of this court, that the district court wouldn't have admitted him pro hoc. Your Honor, I'm not disputing they probably would have admitted him pro hoc. So why should he be denied counsel fees? Because, Your Honor, why should anybody not have to comply with the regulatory requirements? Which regulatory requirements? The California courts, as I read their decisions, say, look, we don't regulate what federal courts do. So we're talking about federal regulatory requirements. Right. But California – the central district of California adopted California law. It didn't have to, but it did. I asked you before, and I think you were interrupted, what exactly does that mean? It says, I assume, that someone can be admitted to the central district if they're admitted in the State of California. Right. Or they could be admitted pro hoc vicee. Right. Now, you're not going to make somebody from Oregon go through and take the California bar. Absolutely not. So the alternative is pro hoc vicee. It's certainly not an unreasonable construction of the pro hoc vicee rule that says if you appear – I'm certain that if he had actually showed up in court and said, can I appear pro hoc, he would have said, can I appear pro hoc vicee, but he wasn't really in court. Is that a reason to deny him counsel fees that he would have otherwise been entitled to? Yes, Your Honor, because then the central district has no control over its admissions process. It doesn't know who's practicing before it. It doesn't have jurisdiction over those people. It doesn't get to assess the form. The fact that he might have gotten in doesn't prove that everybody would get in. They should have to follow the rules to get admitted so the court knows who's practicing in front of it so it can make a determination whether it wants to admit them or not. For example, the form requires you to say how often you've practiced in California and are you doing it on a regular basis and so on. I don't know the answer to that from Mr. Wheatley. So I don't know how the court would have looked at that. Well, the question really is, isn't it, what's the appropriate sanction? If he would have been admitted anyway, why is it just, reasonable, equitable, even makes sense to deny him counsel fees? Because if you don't do that, then people have no incentive to apply. They have no reason to apply. They're not bound by the rules. They don't have to be subjected to the application process. Well, there's somebody appearing in the case who's bound by the rules, who's subject to Rule 11 sanctions, who's signing the papers, who's incorporating the benefit of whatever wisdom he got from his father, who happens to be an extremely able appellate lawyer who practices in Oregon. I quite frankly, I'm not sure why I could think of a reason why he should be denied counsel fees, why this particular sanction should be imposed on him. Well, then, Your Honor, I submit that there's no reason to have the Pro Hoc Vitae procedure, then. Why do you have that and say you must go through this to be admitted to practice before the Central District of California? What do you have to do, at least in the Eastern District, on a Pro Hoc Vitae admission to submit a certificate that you're admitted in the bar of another State or even a Federal Court? I suspect it's the same thing is true in California. There's no great, you don't appear before a character committee, and nobody goes into how qualified you are. It's actually a total and complete formality just showing that you're admitted to another court. Well, I don't believe that that is the rule in the Central District. It is more than simply – Well, I know. I've said I don't know. Right. It is more than simply I am admitted somewhere else. You have to fill out this form. It's part of the Central District's rules, and there are various criteria that you have to meet. One, of course, is being admitted somewhere else, that you're a good character, what's the state of your bar disciplinary record. That's not true. I didn't mean to suggest otherwise, but it all falls down. It all comes down to the same thing, that you're a member in good standing of a bar. And not regularly practicing in California. Well. I don't know the answer to that. That's what I said. I don't know what Mr. Wheatley, Sr. does. But if you don't have these Pro Hoc Vitae applications, how can you keep track of that kind of thing? How do you know who's practicing in California and who isn't? The question is what is an appropriate sanction for what appears to me to be a somewhat inadvertent failure to comply by someone who had clearly been admitted and who would not have been denied or wouldn't in a California court, suing on a contract, I assume, for fees, would not have even been denied fees because the California court said in the excerpt that I read to you, the record doesn't show that he applied, but it seems clear that if he'd applied, he would have gotten fees, he would have gotten admitted. Well, you know, I think the attitude in that decision is certainly pre-Brearbrower. Brearbrower cites it with favor, doesn't it? I think it actually... I don't recall it citing it with favor, but I can't swear one way or the other, Your Honor, but Brearbrower changed things in California. Before that case came down, people weren't concerned about doing what went on there. Nobody worried about that. No one had any concern about it. And the result of Brearbrower was the California Supreme Court then sat down and wrote a whole bunch of rules about when you can engage in multidisciplinary practice and exactly when you can and when you can't. In the state courts of California. Right. It doesn't say in the federal courts. Of course not, Your Honor, but if the central district doesn't want those rules to apply, it shouldn't adopt them, but it has. That's the fundamental thing here. It adopted the California Bar Act as the basis for admissions in the central district. It doesn't have to. And, indeed, it was the case in the past that the central district did not adopt that sort of rule, but it has chosen to do so. Did the central district reenact or reconsider its Cro-Hak-Piche rules after Brearbrower? Not that I'm aware of. I don't think it did. Did it agree that any changes in the State Bar Act would automatically become part of the Cro-Hak-Piche rules? As far as I'm aware, it didn't do anything one way or the other, but it seems to me if you adopt a set of rules, you adopt those rules on an ongoing basis as they may evolve unless you choose to opt out of them and say, no, we don't like this one. And they could do that. The central district could say, we don't like Brearbrower. We're not going to follow Brearbrower. It's not part of our rules here. But unless these rules are to be rendered meaningless so that courts can't control their admissions, there's got to be some kind of sanction. And the sanction in California under the State Bar Act is you can't recover your fees for the activities in California. Does the fact that Mr. Wheatley Sr. did not enter the state of California physically have any bearing on our deliberation? I don't believe so for at least two reasons. One, Brearbrower says very expressly that you can practice law in California by things like telephone calls, faxes, use of computers, and so on. So it's absolutely clear that there's no requirement of physical presence in California. And it would also, I submit, if that weren't the rule, it would ignore the reality of the practice of law. Lots of people participate in cases or are active in cases through communications that don't involve physical presence, whether that's a video conference, a phone call, an email, a letter by snail mail, or whatever it may be. So one can practice in a jurisdiction even though you don't go there physically. We're not suggesting that a de minimis amount of practice is enough. But this doesn't come close to being de minimis. It's not close to that line where there might be a close question. This is the wholesale practice of law. Buy a lawyer in another firm, a firm different than his son's, for several years on a very large number of different discreet matters of the case. If that isn't the practice of law in California, then I don't understand what that term would mean. And it certainly does not require. I mean, in the California courts. Could I ask you a question? Suppose the district judge here had awarded counsel fees and said, I don't think his failure to, under these circumstances, there's a plausible reason for his failure to apply for the PROHOC-BJ admission. I'm going to excuse his failure to do so. I'm going to admit him not pro-tunk. And would that have been an abuse of discretion? I don't know because I don't know what the basis would have been. I just told you what the basis would have been. He said that the reason he didn't apply for PROHOC-BJ admission was I wasn't appearing in the court. And the rules say if you want to appear, you apply for admission PROHOC. And I say as a judge, well, I understand that. It was an oversight. And I'm going to award, I'm going to either admit you not pro-tunk or I'm going to award counsel fees. Would that have been reversible error? Let me put it that way. Your Honor, I think so for two reasons. First, the rules don't simply talk about appearance. I know opposing counsel talks about appearance. But if you read the central district's rules, it talks about admission to the practice before this court. And it talks about not only appearing but participating in the case. So it is not merely appearance that is the standard here. Is that the PROHOC-BJ rule that you're talking about? Yes, Your Honor. It is. My second point, Your Honor, is we raised this in the district court that Mr. Wheatley Sr. was not admitted. We raised it several years before this litigation came to an end. He never sought to get admitted. He never sought non-pro-tunk or anything else. He simply, even though he knew and even though the district court had ruled that he was not allowed to appear and collect fees, he continued to practice before that court without ever seeking PROHOC-BJ admission or doing anything. He simply said, I guess I don't like the rule. I'm not going to comply with it. Counsel, that's an important point. Can you give me a site in the record where you indicated to them and to the district court several years before that he was not admitted and he didn't do anything thereafter? It was in our opposition to the first motion, Your Honor. I can't give you that. Maybe the 28-J letter afterwards you could give us a site that would be helpful. We'll certainly send that with the exact pages. You say several years before. Several years before what? Before this case came up here. Was it before he applied for counsel fees or after? No, the first time he applied. They applied for counsel fees three times in the district court, the first time. So before he applied for counsel fees the first time? No, no, no, no, no. When he applied for counsel fees the first time, we said one of the reasons you're not entitled to them is the Brewer-Brower issue, and the district court agreed. After that, he continued to practice in the case, sought fees a second time, sought fees a third time, and never did anything to get admitted, never sought admission in any way. I don't know why. He should have, but he didn't. Was he granted them? I'm sorry? Was he granted fees? No, he was not. But if he wanted – the district court hadn't said on the first – Was the firm granted fees? I mean, he wasn't just asking for himself. Well, it's essentially for him. There's a little bit for a paralegal. No, but was anybody in the post after the first one? No. Nobody was granted it? Right. Was it on this ground? No, no. But he could have solved our argument. Your argument would have been the same, wouldn't it? If he had done it afterwards, you would have been here making the same argument. As to the fees beforehand. Right. But not for the fees afterwards, because then he would have been in. But my point is that if these rules are to have some kind of meaning and have any kind of bite here, people who are told by a judge you have to get admitted – Well, you could have a disciplinary sanction. Essentially, you could say, all right, you didn't – you should have applied. You didn't – $10,000 discipline. You're asking to be the beneficiary of the windfall that it seems to me I'm not convinced you're entitled to. If he may have violated the rules, okay. There are arguable remedies short of conferring a huge windfall on you. But, Your Honor, that's the kind of argument that Brewer-Brower rejects. Well, it remains to be seen. Well, it has to reject the idea that there's some kind of windfall. Otherwise, it couldn't possibly reach the result it does. No, but Beer-Bower said that the SBA does not regulate practice before the federal courts. Thus, an out-of-state attorney engaged horrendous services in the bankruptcy proceedings was entitled to collect this fee, citing the Cowan case. Of course. That's what it said, and that's what we're talking about. Of course, Your Honor, because they hadn't adopted the State Bar Act in the Bankruptcy Court. The questions are all answered. Does anybody have any questions on the cross-appeal? No. Any questions on the cross-appeal? Okay. Thank you, Mr. Chairman. Thank you. I'm guessing that you've got maybe two or three minutes to equalize the timeout. I'd like to follow through with a distinction that Judge Horman was making concerning the rules in district court, concerning how they tie into the California court, the State Bar Act. It is true that if I applied for admission to the district court, then I would be subject to the State Bar rules, which say I have to be a member of the State of California to be a member of the circuit. That's where the State Bar Act ends. Now, when I apply for pro hoc visi, the State Bar Act of California has nothing at all to do with it. And so to try to provide some linkage between the State Bar Act and pro hoc visi, I think, is not accurate. The second point that I would like to make is that the claim that I had been warned that I should appear pro hoc visi, I think, is inaccurate. As on page 24, citing to you the specific language from the appellee's cost appellant's surpli, surrepli, page 6 is where they point out that I had not, I had concealed myself until after settlement, causing everyone to believe that Wheatley, Jr. was the only one there. After settlement, then petitions were filed for attorney fees. Appeals were made. I have appeared in all the appeals. And that's where that is. And the third point, and I think that, again, Judge Corman was alluding to this, but there are many, many cases, including found, that say the important thing is to have a California attorney who is the nexus between the client and the attorney and the other attorney or who will be the one that causes the work to merge into his final product when it is signed and sent to the court or filtering it. But Judge Wisdom in the Sobrano case, cited at page 27, noted that the federal rule which says that cases shall, the rule should be interpreted or construed to provide a just, speedy, and inexpensive determination of every action. And he said this is the first and the greatest of rules, but it should not be blunted by district courts exaggerating the importance of local rules. And I guess I don't know exactly what he meant by that, but as far as being nine or ten years into a simple contract case, I think he would perhaps be thinking that to say that you have to, up in Oregon, when you're helping your son down there, apply pohawk vishi and be admitted. Suppose a lawyer who is brilliant is disbarred by the California State Bar and moves to Arizona. And does exactly the same thing. Has a relative in California who's a lawyer. And he helps in exactly the same way. Is that different or is it the same? No, I think it is the same as far as not practicing law in California. If this attorney, whether it's a law clerk. All you have to do in order to avoid the strictures of the California Bar is move. No, not at all. You have to have, no, not even close, Your Honor. I'm sorry. Remember, Brubauer involved a case where a New York lawyer represented a California client and then sued the client and said, I want money for it. And they said, hey, our statute says that you can't do it, I say. This is a case where a California lawyer had a California client, served the client. The client is not suing me, nor am I suing the client. And so it is not a situation where I am practicing law in violation of the statute that says an attorney cannot recover compensation for practicing law in California. Now, if there is some criminal misdemeanor violation, that's one which probably the defendants should report to California and they can look into it. But as far as the appearance pro hoc vici or the right for the plaintiffs to recover attorney fees for services, I don't think it applies. What about Mr. Hanke's comment, though? Mr. Hanke made the observation that without the pro hoc vici application, there is no way for the district court in this case to really control the problem that Judge Reimer mentioned of somebody, say, who's been disbarred or somebody that's been convicted of a criminal offense or something like that. How do you control that in a situation such as yours? You don't. I think the way you control it is you say, I have an attorney that's appearing in court, signing the pleadings, subject to contempt and all the sanctions of the court. That attorney has the responsibility. If he went out and had his mailman assist in writing the brief, he is the one that has the ultimate responsibility and the buck stops with him, and I think that's how it is. So in your case, let's just say that you were a citizen of the People's Republic of China, had no experience whatsoever in American law, but your son had confidence in you, you were licensed to practice in China, and you give him the same advice you've done here. Under your suggestion, it sounds like you would still be entitled to attorney fees. Is that incorrect? Well, I think that we're talking now about two separate issues. One is whether a person is practicing law in California in violation of the unlawful practice. I say no. We're talking about the same situation here. Okay. Instead of being in Oregon and the president of the Oregon Bar, you're the president of the Beijing Bar, but you just happen to know a lot about this particular issue. What's the difference? I think that it would be perhaps more like a law clerk or someone as to whether a person could get a reasonable, whether the plaintiff should be entitled to a reasonable fee for those services. So basically, once we get into your postulate, as Mr. Hanke suggested, it really almost gets into a lawless territory. The district court can no longer control who's practicing before it. No, no, no. The district court has all the control in the world as to who practices, and if Wheatley Jr. comes in with some Beijing brief that makes no sense and misrepresents the facts and so on. I'm saying that this is a brilliant Beijing lawyer. Okay. He knows all about the law. Okay. Very helpful. Very helpful in the case. Okay. He's in Beijing. He's the president of the Beijing Bar and does the same thing that you do. Why is that any different other than proximity from what you have here? Well, I suppose it would not be, and I don't believe that the district court would want to tell Wheatley Jr. that he was not entitled nor his client would be entitled to the benefit of that level of expertise. So the Beijing lawyer in your scenario would be entitled to full fees? Yes. Okay. Thank you, counsel. The matter just argued would be submitted. Thank you.
judges: Rymer, Smith, Korman